**Charles N. BEEBE, Petitioner,**

v.

**James VAUGHN, Director of Division of Adult Corrections and the State of Delaware, Respondent.**

**Civ. A. No. 76–434.**

United States District Court, D. Delaware.

April 27, 1977.

---

L. Vincent Ramunno, Wilmington, Del., for petitioner.

Francis A. Reardon, Deputy Atty. Gen., Wilmington, Del., for respondent.

## OPINION

STAPLETON, District Judge.

This is a habeas corpus action pursuant to 28 U.S.C. § 2254 in which the petitioner, Charles Beebe, challenges his convictions for kidnapping, assault with intent to commit rape and assault and battery on the ground that those convictions were obtained in violation of the Interstate Agreement on Detainers (hereinafter "IAD").[1] Two questions are presented for this Court's determination. First, does this Court have jurisdiction in a habeas corpus action to hear a claim arising under the IAD in which both of the jurisdictions involved in the claim are states? If so, did petitioner's conviction violate the terms of the IAD?

## PROCEDURAL BACKGROUND

On October 11, 1973, petitioner was indicted on the charges described above. At that time, he was incarcerated on other charges in the State of Maryland. A capias for his arrest was issued on October 26, 1973, and, thereafter, it was lodged against him as a detainer in Maryland. In February 1974, petitioner wrote to the "Clerk of the Circuit Court House", New Castle County, a non-existent official, informing the Court that he was incarcerated at the Maryland House of Corrections, Jessup, Maryland, and providing "notification to the Court for a fast and speedy trial". The letter was received by the Prothonotary of the Superior Court on February 11, 1974. On February 14, a judge of that court forwarded copies of the letter to the State Attorney General and to the Public Defender. On March 20, the State requested custody of petitioner. Before Maryland acted on that request, in April 1974, pursuant to a

1. 11 Del.C. § 2540, et seq.

request from Mr. Beebe, the warden at Jessup sent to Delaware the official forms employed by the Maryland authorities on behalf of an inmate who is seeking final disposition of charges under the terms of the IAD.

In July, petitioner was transferred to Delaware for trial and, by a letter dated July 26, the deputy attorney general proposed to defense counsel a trial date of August 14. Defense counsel apparently did not respond to that proposal but, on August 13, after the jury panel in Superior Court had been excused for the day, she moved for dismissal of the indictment on the ground that the 180 day period allowed to the State under the IAD for bringing the defendant to trial had elapsed. The court denied the motion and petitioner was tried and convicted on October 23.[2]

Beebe appealed his conviction to the Delaware Supreme Court. The conviction was affirmed and the court held that Beebe's February 11 letter did not commence the running of the IAD-mandated 180 day period for bringing the defendant to trial because he had not made his request for trial through the official who had custody of him as required by the IAD, 11 Del.C. § 2542(b).[3]

In this Court, petitioner acknowledges that his first request for trial did not strictly comply with the formal requirements of the IAD but he asserts that he complied with the spirit of the law and that that was sufficient to activate the statutory protections. For the reasons that appear below, I do not agree with petitioner and, accordingly, the petition for a writ of habeas corpus will be denied.

## JURISDICTION

 Federal habeas corpus jurisdiction pursuant to 28 U.S.C. § 2254 is available to challenge custody only on the grounds that it is in violation of "the Constitution or laws or treaties of the United States." It cannot be relied on to challenge custody alleged to violate State law. The question presented here is whether a claim of illegal custody arising under the IAD, as participated in by two states, Maryland and Delaware, states a claim cognizable in a federal habeas corpus proceeding.

This issue was explicitly left open by the Third Circuit in *United States ex rel. Esola v. Groomes*, 520 F.2d 830, 835–36 (3 Cir. 1975). *Esola* dealt with the question of federal jurisdiction in the context of a dispute under the IAD in which the United States, which also participates in the Agreement,[4] and New Jersey were the jurisdictions alleged to have violated the terms of the IAD. Although the petitioner was attacking a New Jersey conviction, the Court found that the case presented a claim arising under the laws of the United States because the cooperation of the United States in relinquishing custody had been necessary to secure the conviction.

Judge Garth, in a concurring opinion, expressed the view that every case raising a claim under the IAD presents a federal question appropriate for determination under Section 2254. He pointed out that the Compact Clause of the Constitution, Article 1, § 10, cl. 3, requires that any agreement between two or more states be approved by the Congress. Congress gave its consent for states to participate in compacts such as the IAD by the Act of June 6, 1934, 4 U.S.C. § 112. *See* 1970 U.S.Code Cong. & Adm.News p. 4866. Relying on several Supreme Court interpretations of the Compact Clause,[5] Judge Garth reasoned that such congressional approval transforms the IAD, as enacted by the various states individually, into a law of the United States and that

---

2. The delays in trying petitioner after August 14 were due at least in part to defense motions and petitioner makes no claim with respect to them.

3. *Beebe v. State*, 346 A.2d 169 (Del.1975).

4. 18 U.S.C. Appendix.

5. *Petty v. Tennessee-Missouri Bridge Comm'n.*, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959); *Delaware River Comm'n. v. Colburn*, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940).

construction of the agreement involves a "federal title, privilege or immunity". *Esola, supra,* at 841.

The Ninth Circuit, interpreting an interstate regional planning compact, reached a conclusion similar to Judge Garth's. In *League to Save Lake Tahoe v. Tahoe Regional Planning Agency,* 507 F.2d 517 (9th Cir. 1974), the court held that "federal question" jurisdiction under 28 U.S.C. § 1331 exists where a question of interpretation of an interstate compact is presented. Writing for the court, Judge Renfrew noted that the Supreme Court held in *Petty v. Tennessee-Missouri Bridge Commission, supra,* that the interpretation of an interstate compact is a matter of federal law, not the law of the party states and, in *Dyer v. Sims,* 341 U.S. 22, 28, 71 S.Ct. 557, 95 L.Ed. 713 (1951), that no state could be the ultimate arbiter of the law governing a sister state. He concluded that, "despite the legitimate and far-reaching interests of the party states," *Id.,* at 523, n. 13, interpretation of the compact was a matter appropriate for "federal question" jurisdiction under Section 1331.

While the majority opinion in *Esola* leaves the issue in some doubt in this Circuit, I am persuaded by the reasoning of Judge Garth and Judge Renfrew that this Court has habeas corpus jurisdiction to hear the claim presented here under the IAD as adopted by Delaware and Maryland.

## COMPLIANCE WITH THE COMPACT

■ The IAD provides an inmate who is incarcerated in a State that is a party to the Agreement and who has criminal charges against him or her in another party State with a means to request prompt disposition of those charges. Once the inmate files a proper request for disposition, the charging State has 180 days within which to take custody of the inmate and bring him or her to trial. If the charges are not finally adjudicated within this period, the individual charged is entitled to have them dismissed. 11 Del.C. § 2542. The statute is

designed to give the inmate an opportunity to resolve the uncertainties which are created by outstanding charges and which obstruct prison treatment and rehabilitation programs. 11 Del.C. § 2540. The charging State, on the other hand, has an interest in bringing to trial those who are charged with violations of its laws. In order to act within the time limits set by the Agreement, the State needs to be apprised that a defendant is asserting his or her rights under the Act.

The Agreement provides a three step process by which both the interests of the inmate and the interests of the charging State may be furthered. First, the official who has custody of an inmate is required to inform the inmate of the existence of any detainer and of his or her rights under the IAD to request final disposition of the underlying charges. The inmate is then required to notify *the custodian* that he or she wishes a final disposition of the charges. The custodian then forwards the inmate's request, along with a certificate stating the terms of the present commitment, the time remaining to be served, the amount of good time earned and information regarding parole eligibility of the inmate, to the State that has placed the detainer.

With the receipt of that formal request, the charging state is put on notice that it has 180 days to bring the defendant to trial. The prosecutor, at the same time, receives valuable information to assist in determining whether there is some reason why the defendant should not be brought to trial and the charges should be dismissed.[6]

In this case, although the proper parties ultimately received petitioner's informal request for disposition of the charges, they were not given notice that the petitioner was invoking the benefits of the IAD and that they would be held to the requirements of the statute. Moreover, they were given little information about Beebe's current term of incarceration. Finally, this is not a case in which the petitioner maintains that

---

**6.** For example, the State might well elect not to prosecute on a minor charge if a person requesting disposition of it were already serving a long sentence on a serious charge.

the warden of his institution is responsible for the procedural default.[7] Petitioner does not argue that the warden in Maryland failed to inform him of the existence of the detainer or of his rights under the IAD. Under these circumstances, I hold that the 180 day period did not begin to run until April of 1974 when the State of Delaware received the notification required by the IAD.

The petition for a writ of habeas corpus will be denied.

---

**7.** *Compare Pittman v. State,* 301 A.2d 509 (Del. 1973), in which the court held that an inmate seeking the benefits of the IAD cannot be pe-

nalized for the failure of the custodial state to perform its duties under the Act.