OPINION OF THE COURT
William Kapelman, J.
Defendant moves to dismiss the indictment pursuant to subdivision (e) of article IV of the agreement on detainers (CPL 580.20) on the ground that he was brought to New York under the agreement and was returned to the original place of imprisonment before being tried on the indictment.
On November 10, 1976, the Grand Jury of Bronx County returned a two count indictment charging defendant with the crime of criminal possession of a weapon in the third degree. *575 Defendant was arraigned on the indictment on November 30, 1976 and was released on bail.
On September 1, 1977, the Grand Jury of Westchester County returned a two count indictment charging defendant with the crime of criminal possession of a weapon in the third degree.
While the Bronx County and Westchester County cases were pending, defendant was arrested by Federal authorities and was tried in the United States District Court for the Southern District of New York for Federal crimes. On December 2, 1977, defendant was convicted of conspiracy in violation of section 846 of title 21 of the United States Code and was remanded to the custody of the warden of the Metropolitan Correctional Center. On January 23, 1978, defendant was sentenced to a term of imprisonment of 15 years to be followed by lifetime parole and a fine of $25,000.
After defendant was sentenced in Federal court, the District Attorney of Westchester County lodged a detainer against him with the warden of the Metropolitan Correctional Center and requested temporary custody pursuant to the agreement on detainers so that defendant could be tried on the Westchester County indictment. On January 31, 1978, an Assistant District Attorney, Bronx County, wrote a letter to Federal authorities at the Metropolitan Correctional Center, requesting that defendant be sent to a Federal penitentiary near New York City so that a subsequent transfer to Bronx County authorities would be both physically and economically convenient.
On March 21, 1978, the warden of the Metropolitan Correctional Center refused to grant temporary custody to Westchester County authorities and defendant was transferred to the United States Penitentiary at Lewisburg, Pennsylvania. The request for temporary custody was granted on April 25, 1978, however, and defendant was brought to Westchester County for trial.
On May 23, 1978, the District Attorney of Bronx County lodged a detainer against defendant with the warden of Westchester County Jail.
On June 1, 1978, defendant requested that the bail set in Bronx County be exonerated, since he was a sentenced Federal prisoner and was currently incarcerated in Westchester County awaiting trial. The court granted the motion and exonerated the bail.
*576 On November 2, 1978, defendant was acquitted of the charges in Westchester County and was returned to the United States Penitentiary at Lewisburg, Pennsylvania, on November 6, 1978.
On November 15, 1978, the District Attorney of Bronx County lodged a detainer against the defendant with the warden of the United States Penitentiary at Lewisburg, Pennsylvania, and requested temporary custody pursuant to the agreement on detainers. The request was granted and defendant was brought to Bronx County for trial on December 20, 1978.
Defendant contends that (1) the letter sent by an Assistant District Attorney, Bronx County, to Federal officials at the Metropolitan Correctional Center constitutes a detainer within the meaning of the agreement on detainers, relying on United States v Mauro (544 F2d 588); (2) the detainer lodged by the District Attorney of Bronx County with the warden of the Westchester County Jail constitutes a detainer lodged with the United States within the meaning of the agreement; and (3) when he was returned to Federal custody after the trial in Westchester County, he was returned to the original place of imprisonment without having been tried on the indictment contemplated by his production in New York, and that therefore he is entitled to a dismissal of the Bronx County indictment.
The Interstate Agreement on Detainers Act has been adopted by both New York (Code Grim Pro, § 669-b, as added by L 1957, ch 524, § 1; CPL 580.20, as added by L 1970, ch 996, § 1) and the United States (US Code, tit 18, Appendix, p 1395 et seq.). The agreement is an interstate compact sanctioned by Congress under article I (§ 10, subd 3) of the United States Constitution ( US Code, tit 4, § 112, subd [a]). The construction of such a compact presents a question of Federal law and involves Federal rights (Petty v Tennessee-Missouri Comm., 359 US 275, 278; Delaware Riv. Comm, v Colburn, 310 US 419, 427; Echevarria v Bell, 579 F2d 1022, 1024-1025).
In construing the agreement the United States Supreme Court has stated that "the provisions of the Agreement are triggered only when a 'detainer’ is filed with the custodial (sending) State by another State (receiving) having untried charges pending against the prisoner; to obtain temporary custody, the receiving State must also file an appropriate 'request’ with the sending State.” (United States v Mauro, 436 *577 US 340, 343-344, revg 544 F2d 588, supra.) In the case at bar, two detainers were ultimately filed against defendant with the United States, which is defined as a "State” by subdivision (a) of article II of the agreement. The first detainer was lodged by the District Attorney of Westchester County in January, 1978 and was accompanied by the appropriate request for temporary custody. When temporary custody was granted by the United States to authorities of Westchester County, no other New York detainers were outstanding against defendant.
Defendant argues, however, that the letter by an Assistant District Attorney, Bronx County, to Federal authorities on January 31, 1978 constitutes a detainer within the meaning of the agreement. Thus, the argument continues, when the United States granted temporary custody to Westchester County authorities, all outstanding New York charges, including those in Bronx County, should have been tried before defendant was returned to the original place of imprisonment. The failure to do so, he contends, requires dismissal pursuant to subdivision (e) of article IV.
There is no question that had the District Attorney of Bronx County filed a detainer against defendant with the United States before April 25, 1978, when defendant was brought to Westchester County, the United States would have been obligated under subdivision (b) of article IV to furnish Bronx County authorities with a notice (1) informing them of the request by Westchester County and (2) enabling suitable arrangements for the disposition of the Bronx County charges. But the letter of January 31, 1978 was not a detainer within the meaning of the agreement. Although the agreement does not define the term "detainer”, it has been defined as an administrative notification lodged or filed with the institution in which a person is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction and requesting that he be detained (see People v Valenti, 90 Misc 2d 904, 908). The letter sent by an Assistant District Attorney, Bronx County, merely requested that defendant serve his Federal sentence at an institution near New York City to facilitate any subsequent custody by Bronx County authorities. It did not formally advise the United States of the charges pending against defendant, nor did it request that he be detained. Moreover, the letter was not lodged with the institution in which the defendant would be serving his Federal sentence.
*578 The only purpose of the letter was to request the Attorney General of the United States to exercise his authority pursuant to section 4082 of title 18 of the United State Code to transfer a prisoner and relocate him to another Federal facility. Even after such a transfer, a prisoner remains in Federal custody (see Lopez v Levi, 422 F Supp 846, 850). Therefore, the letter did not constitute a detainer or a request for temporary custody. Even if the letter had notified the United States that the District Attorney of Bronx County intended to secure the custody of defendant, such a letter could not reasonably be held to constitute a detainer within the meaning of the agreement (United States ex rel. Schlobohm v Medical Center for Federal Prisoners, 453 F Supp 618, 620, n 6).
In sum, when temporary custody was granted by the United States on April 25, 1978 to authorities of Westchester County, such custody was granted "only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers or for prosecution on any other charge or charges arising out of the same transaction.” (CPL 580.20, art V, subd [d]; emphasis added.) The only detainer lodged with the United States was that filed by the District Attorney of Westchester County. Thus, temporary custody was granted to Westchester County authorities to try defendant on the Westchester County indictment, and no authority existed for defendant to be tried on Bronx County charges. When the District Attorney of Bronx County filed a detainer on May 23, 1978 with the Westchester County Jail, the detainer was without legal effect because for all purposes other than trial on the Westchester County indictment, defendant was deemed to remain in the custody of and subject to the jurisdiction of the United States (CPL 580.20, art V, subd [g]). In order to secure temporary custody of defendant for trial in Bronx County, the District Attorney of Bronx County was required by the agreement to lodge a detainer with the United States. Since he had not done so as of April 25, 1978, the agreement had not become applicable to the Bronx County charges and the District Attorney of Bronx County was not bound by its provisions (see United States v Mauro, 436 US 340, 361, supra).
When defendant was returned to the United States Penitentiary at Lewisburg, Pennsylvania, after trial in Westchester *579 County, he was not returned to the original place of imprisonment before trial on the indictment contemplated by his production in New York. It is clear from the language of subdivision (e) of article IV and judicial interpretation that "Article IV(e) required the dismissal of the indictment against a prisoner who is obtained by a receiving State if he is returned to his original place of imprisonment without first being tried on the indictment underlying the detainer and request by which custody of the prisoner was secured (United States v Mauro, 436 US 340, 345, n 4, supra; emphasis added.) Defendant had been tried on the only indictment which formed the basis of the detainer and request lodged with the United States. Since the Bronx County charges did not support the detainer and request by which custody of defendant was secured, the indictment cannot be dismissed pursuant to subdivision (e) of article IV.
The provisions of the agreement were triggered as to the Bronx County indictment when the second detainer was lodged against defendant with the United States, i.e., the detainer and request lodged by the District Attorney of Bronx County on November 15, 1978. By acting in accordance with subdivision (a) of article IV for the first time, the District Attorney of Bronx County became bound by the provisions of the agreement. Having lodged a detainer with the United States, the District Attorney of Bronx County initiated the procedures to have defendant made available by presenting a written request for temporary custody, approved by the court, to officials of the United States (art IV, subd [a]; see United States v Mauro, 436 US 340, 351-352, supra). Pursuant to that request, defendant was brought to Bronx County for trial on December 20, 1978. Consequently, all of the obligations and limitations of the agreement have been applicable to the case at bar since November 15, 1978, and will govern the prosecution of this case until its conclusion.
For the foregoing reasons, the motion to dismiss the indictment pursuant to subdivision (e) of article IV of the agreement on detainers is denied.