OPINION OF THE COURT
Nicholas Colabella, J.
Defendant moves for an order dismissing the indictment on the grounds that the People failed to bring him to trial within 180 days of defendant’s request for final disposition of the indictment, pursuant to CPL 580.20, article III (otherwise known as the Agreement on Detainers). The pertinent facts are as follows.
Defendant failed to appear on the date set for the start of trial and a bench warrant was issued. Subsequently, defendant was incarcerated in Palm Beach County, Florida, pending disposition of two separate matters, in different jurisdictions, in that State. On January 28, 1985, the Westchester County Warrant Fugitive/Division advised, by letter, the Palm Beach County Sheriff’s office of the Westchester County Court warrant, and asked that the warrant be lodged against defendant and that they be notified if and when defendant was convicted of the charges pending in Florida so that extradition proceedings could be instituted.
On May 13, 1985, defendant was sentenced in Palm Beach County. At that time there were still charges pending in Broward County, Florida. On May 17, 1985, a handwritten document prepared by defendant and entitled "Disposition of Charges” was received by certified mail at the office of the Westchester County Attorney. According to the People, a Deputy County Attorney then delivered this document to the District Attorney’s office on May 21, 1985.
Defendant was sentenced in Broward County on June 6, 1985. Defendant was received by the Florida Department of Corrections, and began service of his sentences of imprisonment on June 14, 1985. By letter dated June 26, 1985, the *120 Broward County Sheriffs office advised the Westchester authorities that defendant had been sentenced and that their detainer should be lodged with the Department of Corrections. By letter dated July 15, 1985, the Westchester County Warrant/Fugitive Division lodged a detainer against defendant with the Department of Corrections. Then, on July 19, 1985, the District Attorney sent the Department of Corrections an order, signed by this court, accepting temporary custody of defendant.
According to defendant he had inquired of the Florida authorities, both orally and in writing, about the status of the Westchester County detainer on several occasions from June 14 until shortly after July 19, 1985. He ceased to inquire when he was provided with a copy of the order signed by this court. Upon each of defendant’s prior inquiries, he was advised that there was no detainer lodged against him or that, "there may be charges pending in New York”. On or about November 6, 1985 for the first time, the Florida Department of Corrections provided defendant with the proper form for requesting a final disposition pursuant to Agreement on Detainers article III.
Defendant was produced before this court on December 12, 1985. For various'administrative reasons, the earliest date on which he could have been brought to trial was January 6, 1986.
The Agreement on Detainers is an interstate compact whose purpose is to standardize, and thereby expedite, the rendition of prisoners in order to dispose of, and to preserve an incarcerated defendant’s rights to the speedy trial of untried indictments, informations or complaints in another State. (See, People v Gabbidon, 116 Misc 2d 127 [Sup Ct, Kings County 1982].) In order to achieve this purpose, article III of the statute provides that: "(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and * * * there is pending in any other party state any untried indictment * * * on the basis of which a detainer has been lodged * * * he shall be brought to trial within one hundred eighty days after [delivery] to the prosecuting officer and the appropriate court * * * written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment”.
New York and Florida are both signatories to the compact. (CPL 580.20; Fla Stats Ann §§ 941.45-941.50.)
Thus the Agreement on Detainers is applicable in those instances where three basic conditions are present.
*121 First, the defendant must have entered upon a term of imprisonment in a penal or correctional institution. A prisoner achieves this status on the date that he is delivered to the institution in which he is to serve a sentence of imprisonment. (Matter of Cresong v Nevil, 51 AD2d 1096 [3d Dept 1976].) Defendant entered upon a term of imprisonment in Florida on June 14, 1985. Prior to that date he had been incarcerated, and one sentence had been pronounced on May 13, 1985, but he was not delivered to a correctional institution to serve any sentence until June 14, i.e., after the second sentence had been pronounced.
Next, there must be an untried indictment, information or complaint pending in another party State. Obviously, this condition was present in this instance. (Compare, People ex rel. Capalongo v Howard, 87 AD2d 242 [3d Dept 1982].)
Finally, a detainer must have been lodged against the prisoner, on the basis of such untried indictment, during the continuance of his term of imprisonment. Although "detainer” is not defined in the statute, each item of correspondence from Westchester County to Florida authorities, on January 28 and July 15, 1985, clearly' constituted the lodging of a detainer in itself. (Cf. People v Hayden, 98 Misc 2d 574 [Sup Ct, Bronx County 1979]; People v Valenti, 90 Misc 2d 904 [Monroe County Ct 1977].) In each item the Florida custodial authorities were notified that defendant was wanted to face criminal charges pending in New York and were requested to detain defendant for such purpose. (People v Valenti, supra.)
Where the Agreement on Detainers is applicable, article III (a) thereof provides what information and documentation must accompany the prisoner’s notification and request; subsection (b) further provides that, upon receipt of a prisoner’s written notice and request, the authorities responsible for the prisoner’s custody shall promptly forward it and the other required documentation to the appropriate court and prosecutorial official by certified or registered mail. (CPL 580.20.)
Therefore, all a prisoner need do to assert his statutory rights, and start the 180-day "clock” running, is notify the authorities in the institution in which he is being held of his desire to request a final disposition of the untried indictment. The obligation to comply with the statutory requirements as to manner and content of notification, and the burdens and consequences of noncompliance then fall upon the custodial authorities. (People v Diaz, 94 Misc 2d 1010 [Sup Ct, NY County 1978].)
*122 However, where, as here, the prisoner chooses not to notify the custodial authorities but rather takes it upon himself to serve notification of his place of imprisonment and request a final disposition, the burdens and consequences of noncompliance are his. (Matter of Hill v Jones, 94 AD2d 904 [3d Dept 1983].) Defendant’s handwritten "Disposition of Charges” failed to comply in several respects.
Initially, of course, defendant attempted to comply with the Agreement on Detainers before he had accrued any rights thereunder because he had not yet entered upon a term of imprisonment. But even if this court were to find that defendant’s notification and request simply lay dormant until it was "activated” by his delivery to the correctional institution to serve his sentences of imprisonment, we would still hold that his attempt was unsuccessful. Defendant erroneously mailed his document to the Westchester County Attorney rather than the prosecuting officer, and he failed entirely to mail it to the appropriate court. Furthermore, the document was insufficient in that it was not accompanied by the required information and documentation from the Florida correctional authorities.
Thus, defendant’s handwritten document did not effectively assert his statutory rights or start the "clock” running. However, our inquiry is not thereby brought to an end. While it may be said that defendant’s failure to comply with the statute constitutes a waiver of his rights thereunder as to the document he actually mailed (People v Primmer, 59 AD2d 221 [3d Dept 1977] [defendant’s appeal was actually denied on other grounds]), he did not thereby waive such rights as may accrue to him in futuro.
Agreement on Detainers article III (c) mandates that: "[t]he * * * official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right[s] [under the statute]”. (CPL 580.20.) Such custodial official is presumed to have knowledge of the law and has a duty to "promptly” inform the prisoner about any detainer and his rights. (People v Esposito, 37 Misc 2d 386, 393 [Queens County Ct 1960].)
From June 14, 1985, the date defendant was delivered to the correctional institution and thus the date on which his statutory rights accrued, at least until shortly after July 19, 1985, defendant alleges he was not informed about the Westchester County detainer. The People neither deny nor expressly confirm these allegations. Yet the People allege that by letter *123 dated June 26, 1985 they were informed by the Broward County Sheriff’s office that defendant had been sentenced on local charges. That letter, attached as an exhibit to the People’s affidavit in opposition, also advised the Westchester authorities that they would have to lodge a detainer with the Florida Department of Corrections.
The clear inference drawn, from the content of the June 26 letter, is that the Florida Department of Corrections had not been advised of the Westchester detainer which had been lodged with local officials on January 28, 1985. Thus, the failure of the correctional authorities to promptly inform defendant of the detainer was not, apparently, a matter of design. Obviously, they could not inform defendant about a detainer of which they had not been advised.
Rather, the correctional authorities’ nonfeasance was the product of a bureaucratic mishap and lack of basic communication between local and State officials. Furthermore, the court notes that no Westchester County official undertook or failed to undertake any action designed to frustrate defendant’s rights. Yet if, as the People argue, the 180 days did not begin to run until the Florida correctional authorities finally fulfilled their statutory duties, on November 11, 1985, then defendant’s rights will have been frustrated nonetheless.
Regardless of which jurisdiction he is an officer of, the nonfeasance of a governmental official cannot toll the running of the statutory time period in derogation of a prisoner’s rights. (People v McBride, 44 NY2d 1001 [1978]; People v Diaz, supra.) Further, lest the statute’s clearly stated purposes be defeated, the statutorily imposed obligations of custodial officials must be strictly enforced; thus, the fact that said official’s failure to act was not in bad faith is irrelevant. (People v Esposito, supra.)
Apparently, the issue presented is one of first impression. There is no published decision of a New York State court dealing with this particular type of nonfeasance, i.e., failure to inform a prisoner of a detainer due to "loss” of the detainer during a transfer of custody. However, two recent decisions of appellate level courts of sister State signatories to the Agreement on Detainers provide persuasive authority.
While the defendant, in Romans v District Ct., In & For Eighth Judicial Dist. (633 P2d 477 [Col 1981]) was in Federal* custody, but before he had "entered upon a term of imprisonment”, a Colorado detainer was lodged against him. A few *124 days later defendant advised the Federal correctional officials that he had heard rumors of the detainer and was requesting a final disposition of the untried Colorado indictment. However, defendant was not "informed of the source and contents” of the detainer by an official until 56 days after he began serving his sentence.
The Supreme Court of Colorado held: "There is no presumption that officials of an imprisoning state have performed their duties under the Agreement with regularity * * * We hold that when officials of the state imprisoning the defendant do not comply with the mandates of Article III (c), the indictments, informations, or charges against the defendant pending in the jurisdiction from which the detainer emanates shall be dismissed with prejudice.” (633 P2d, at p 481.)
In State v Wells (186 NJ Super 497, 453 A2d 236 [1982]) the defendant was incarcerated pending disposition of charges in Massachusetts* when a detainer was lodged against him on the basis of an untried New Jersey indictment. After his conviction in Massachusetts defendant was transported to, and incarcerated in, Florida pending charges in that State. The New Jersey detainer accompanied defendant from Massachusetts to the local authorities in Florida, but was "lost” before or during the transfer of custody from the local authorities to the Florida Department of Corrections after sentence had been pronounced. Defendant’s requests that notification and request for disposition be sent to New Jersey were refused because the correctional authorities had no record of the detainer. Eventually, the detainer was "discovered” and the notification and request were sent, but defendant was brought to trial and convicted in New Jersey within 180 days of the date on which the papers were received by the New Jersey authorities. The Superior Court of New Jersey, Appellate Division, reversed the conviction and dismissed the indictment.
The court held that the detainer had been "lodged”, within the meaning of the Agreement on Detainers, when defendant was in Massachusetts custody and that it followed defendant to Florida. "[The date of] its 'lodging’ cannot be permitted to turn on the manner of its clerical handling or mishandling by the Florida authorities” (186 NJ Super, at p 501, 453 A2d, at p 238).
*125 In both Romans (supra) and Wells (supra), as here, had the prisoner been promptly advised of the detainer, the date on which he was, or could have been, brought to trial would not have been within 180 days. This assumes that the prisoner would have notified the correctional authorities of his desires immediately, but to assume otherwise would improperly shift the burden for noncompliance to the prisoner.
In both Romans and Wells (supra), as here, the prisoner had actual knowledge, gained through other means, that the detainer had been lodged. However, such knowledge is useless to a prisoner if the correctional authorities are not as well informed. For example, it is evident that this defendant could not have satisfactorily complied with the statutory requisites as to the manner and content of notification without the cooperation of the correctional authorities.
The persuasiveness of the Romans and Wells decisions is further strengthened because in each case the principles from which the court’s reasoning develops have their source in the earlier decisions of New York State courts. (See, Romans v District Ct., In & For Eighth Judicial Dist., supra, at p 481 [citing and quoting from People v Esposito, supra]; State v Wells, supra, at p 238 [citing People v Masselli, 17 AD2d 367 [1st Dept 1962].)
Accordingly, it is the decision and order of this court that the Westchester County detainer was "lodged”, within the meaning of Agreement on Detainers article III, on June 14, 1985. Since defendant had also been delivered to the Florida Department of Corrections on that date, to enter upon a term of imprisonment, his statutory rights simultaneously accrued. Finally, because the Florida correctional authorities did not fulfill their statutorily imposed duties to promptly inform defendant of the detainer and of his rights, the People had 180 days from that date to bring defendant to trial. Since defendant could not have been brought to trial before January 6, 1986, more than 180 days thereafter, the indictment must be and is hereby dismissed. (CPL 580.20.)

 The United States Government and the Commonwealth of Massachusetts are both signatories to the Agreement on Detainers.