PEOPLE v MALONE

Docket No. 95284. Submitted April 13, 1989, at Lansing. Decided June
   6, 1989.

   On July 19, 1985, Christopher Malone was sentenced to serve
   four years in prison in Illinois for violating probation for a
   robbery conviction. On July 29, 1985, the warden of the Illinois
   correctional facility acknowledged receipt of a Michigan war-
   rant charging Malone with felony murder and armed robbery.
   The warrant was served on Malone that same day and Malone
   signed a form containing notice of his place of confinement and
   requesting final disposition of the pending complaint. The
   Genesee County Prosecuting Attorney received the form on
   August 28, 1985, and requested that Illinois authorities turn
   over custody of Malone for purposes of trial. On September 26,
   1985, Malone was returned to Michigan. Pretrial conference
   was scheduled for October 7, 1985, but the presiding judge
   disqualified himself with the consent of both parties because he
   had presided over the preliminary examination of another
   individual involved in the case. The preliminary examination
   was rescheduled and held on October 21, 1985. Malone was
   bound over to Genesee Circuit Court for arraignment on an
   open charge of murder on November 12, 1985. On November
   12, 1985, the arraignment was adjourned to November 18
   because no information had been filed against Malone. Defense
   counsel consented to the adjournment. Defendant entered a
   plea of not guilty on November 18, and a trial date of February
   14, 1986, was set. On February 14, trial was adjourned to
   enable defense counsel to secure a transcript of Malone's pre-
   liminary examination. Trial commenced on February 28, 1986,
   and on March 14, 1986, the jury convicted Malone of second-
   degree murder. He was sentenced to thirty to fifty-five years in

REFERENCES

Am Jur 2d, Criminal Law §§ 404-407, 552, 553; Evidence §§ 411 *et
   seq.*
Validity, construction and application of Interstate Agreement on
   Detainters. 98 ALR3d 160.
Comment Note.—"Fruit of the poisonous tree" doctrine excluding
   evidence derived from information gained in illegal search. 43
   ALR3d 385.

prison, to be served consecutively to his Illinois sentence, Donald R. Freeman, J. Malone appealed.

The Court of Appeals *held:*

1. Defendant's contention that he was not timely brought to trial under the Interstate Agreement on Detainers is rejected. Under Article III of the IAD, applicable here, a defendant must be brought to trial within 180 days after he causes to be delivered to the prosecuting attorney and the appropriate court written notice of his place of confinement and his request for a final disposition of the charges against him. The 180-day period in this case commenced on July 29, 1985. Considering thirty-four days of reasonable and necessary delay which should be excluded from the calculation of the 180-day period, the 180-day deadline became February 28, 1986, the day on which trial began. The 180-day period was not violated.

2. Defendant's claim that certain physical evidence should have been excluded because it was discovered as the result of an unreasonable search and seizure is without merit. There was no official impropriety against defendant, and defendant had no reasonable expectation of privacy in the articles seized or the area searched which would confer upon him standing to challenge the search and seizure.

3. The court erred in imposing a consecutive sentence. The sentence should run concurrently with the Illinois sentence.

Affirmed, except as to the modification of the sentence.

1. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — 180-DAY PERIOD.

The 180-day period set forth in Article III of the Interstate Agreement on Detainers commences when the individual serves his disposition request to the authorities of the facility where he is confined (MCL 780.601; MSA 4.147[1]).

2. CRIMINAL LAW — INTERSTATE AGREEMENT ON DETAINERS — 180-DAY PERIOD.

The trial court may grant reasonable continuances for good cause shown in open court in the presence of the defendant or defense counsel under the terms of Article III of the Interstate Agreement on Detainers, and any delays caused by the defendant or to accommodate the defendant are to be discounted when calculating the 180-day period set forth in Article III (MCL 780.601; MSA 4.147[1]).

3. SEARCHES AND SEIZURES — EXCLUSION OF EVIDENCE — FRUIT OF THE POISONOUS TREE.

The fruit of the poisonous tree doctrine calls for the exclusion of evidence only where that evidence was obtained as a result of

official impropriety directed against the party moving for suppression.

4. SEARCHES AND SEIZURES — STANDING.

Standing to challenge a search or seizure is not automatic; rather, the challenger must have a special interest in the area searched or the article seized, and the test is whether he had a reasonable expectation of privacy in the object or area of the intrusion.

5. CRIMINAL LAW — SENTENCING — CONSECUTIVE SENTENCES.

A consecutive sentence may not be imposed unless specifically authorized by statute.

6. CRIMINAL LAW — SENTENCING — CONSECUTIVE SENTENCES — PENDING OFFENSES — PROBATION.

An offense for which probation has been ordered is not pending for purposes of the statute which permits the imposition of a consecutive sentence for a person who commits a felony while charged with another felony and awaiting the disposition of that charge (MCL 768.7b; MSA 28.1030[2]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *Robert E. Weiss,* Prosecuting Attorney, *Donald A. Kuebler,* Chief, Appellate Division, and *Gladys L. Christopherson,* Assistant Prosecuting Attorney, for the people.

*Joseph J. Farah,* for defendant on appeal.

Before: BEASLEY, P.J., and WEAVER and CAVANAGH, JJ.

BEASLEY, P.J. On March 14, 1986, a jury convicted defendant, Christopher Malone, of second-degree murder, MCL 750.317; MSA 28.549. Defendant was sentenced to serve not less than thirty nor more than fifty-five years in prison, to be served consecutively to a sentence defendant was serving in Illinois. Defendant appeals, raising three issues.

First, defendant contends that he was not timely brought to trial under the Interstate Agreement

on Detainers.[1] The IAD is a uniform law which prescribes procedures by which a prisoner may demand the prompt disposition of charges pending against him in a state other than the one in which he is imprisoned and prescribes procedures by which a state may obtain, for trial, a prisoner who is incarcerated in another state.[2] The act sets forth two time limits within which trial must be commenced against a defendant serving time in another state. Which time limit is applicable depends upon whether the defendant affirmatively requests final disposition. Where the defendant does so, Article III of the act controls, providing:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made* of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. [Emphasis added.]

Where the defendant does not affirmatively request final disposition on the detainer, Article IV of the act provides:

---

[1] MCL 780.601 *et seq.*; MSA 4.147(1) *et seq.*

[2] *People v Browning (On Reh),* 108 Mich App 281, 290; 310 NW2d 365 (1981).

> (c) [T]rial shall be commenced within one hundred twenty days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. [Emphasis added.]

On July 19, 1985, the State of Illinois sentenced defendant to serve four years in prison for violating probation for a robbery conviction. On July 29, 1985, the warden of the Illinois correctional facility acknowledged receipt of the Michigan warrant[3] and stated that a copy had been served upon defendant. Apparently, on that same date, defendant signed an "Agreement on Detainers Form II" containing notice of his place of confinement and a request for final disposition on the pending complaint. Defendant then gave this form to an Illinois prison official for transmission to the appropriate Michigan authorities, pursuant to Article III(b) of the IAD. Thus, the time limitation of Article III controls. The prosecutor here in Michigan received the form on August 28, 1985, and thereupon utilized a "Form VII" to request that Illinois correctional officials turn over custody of defendant for purposes of trial.

On September 26, 1985, defendant was returned to Michigan. The following day, defendant was arraigned in the district court. On October 7, 1985, the date of the pretrial conference, the presiding district court judge disqualified himself, with the consent of both parties, since he had presided over the preliminary examination of another individual involved in the criminal events out of which the charges against defendant arose. Accordingly, de-

---

[3] No one seems to know who sent a copy of the warrant to Illinois. At the evidentiary hearing below, the prosecutor speculated that the Michigan State Police may have done so.

fendant's preliminary examination was adjourned to October 21, 1985. Following the preliminary examination on October 21, 1985, before another district court judge, defendant was bound over to the circuit court to be arraigned on November 12, 1985. On November 12, 1985, the arraignment was adjourned to November 18, since no information had yet been filed. Defense counsel consented to this adjournment. On November 18, 1985, defendant entered a plea of not guilty, and a trial date of February 14, 1986, was set. On February 14, trial was adjourned so as to enable defense counsel to secure a transcript of defendant's preliminary examination. Trial commenced on February 28, 1986.

The first question we need address is when did the 180-day time period begin to run? Defendant argues that we should look to the date he signed the request for final disposition and turned it over to Illinois prison officials, July 29, 1985. The prosecution, on the other hand, argues that the date it received that request, August 28, 1985, is the proper starting point. This issue was recently addressed by this Court in *People v Marshall*,[4] wherein we stated:

> In this case, contrary to the prosecutor's argument that the 180-day period had not been triggered since notice of defendant's first request of March 11, 1985, for final disposition was never served on the Berrien County prosecutor's office, we hold that *defendant complied with the notice requirement of Article III(a) when he served his disposition request to the Wisconsin prison authorities. . . .* Defendant was not tried within the 180-day period and the prosecutor did not establish good cause for the delay. Therefore, the

---

[4] 170 Mich App 269, 277; 428 NW2d 39 (1988).

conviction in this case is vacated and the charges dismissed. [Emphasis added; citations omitted.]

Accordingly, the 180-day period was triggered on July 29, 1985, and ran out on January 27, 1986.[5]

While defendant's trial did not, on its face, commence within 180 days, Article III of the IAD provides that the trial court may grant reasonable continuances for good cause shown in open court in the presence of defendant or defense counsel. Further, any delays caused by the defendant or to accommodate the defendant are to be discounted from the time period calculations.[6] We believe that the adjournment of defendant's preliminary examination from October 7, 1985, to October 21, 1985, arising out of the disqualification of the judge who had heard the companion case against one of defendant's cohorts, was for good cause and in accommodation of defendant's interests. That fourteen-day period must be excluded from our time calculations. Also, the arraignment adjournment from November 12, 1985, to November 18, 1985, was necessary and reasonable and, further, consented to by defense counsel. Finally, the trial adjournment from February 14, 1986, to February 28, 1986, to enable defense counsel to secure a copy of defendant's preliminary examination transcript must be discounted from the calculation. In sum, thirty-four days of reasonable and necessary delay occurred which should be excluded from our calculation of the 180-day time limit, thus bumping the deadline back from January 27, 1986, to

---

[5] Actually, the 180th day would have been January 25, 1986. However, as that date fell on a Saturday, the period ran until the following Monday, January 27, 1986. MCR 1.108(1).

[6] *People v Cook*, 95 Mich App 645, 653; 291 NW2d 152 (1980), lv den 412 Mich 882 (1981); *People v Harris*, 148 Mich App 506, 513; 384 NW2d 816 (1986).

February 28, 1986.[7] Defendant's trial commenced on this date and was, therefore, timely under the IAD.

Defendant also argues that certain evidence was improperly admitted, claiming that it was discovered through an unreasonable search and seizure. The physical evidence at issue was a billy club and some bloody clothing found on the rooftop of a supermarket. Police were led to the roof by the statements of a coperpetrator. These statements were suppressed as involuntary in the coperpetrator's trial.[8] Defendant now argues that the items found on the rooftop should have been suppressed as fruit of the poisonous tree.[9]

At the outset, we note that defendant failed to raise this challenge below.[10] Generally, this Court will not review an issue raised for the first time on appeal. In any event, we find the claim to be without merit.

The fruit of the poisonous tree doctrine calls for the exclusion of evidence only where that evidence was obtained as a result of official impropriety directed against the party moving for suppression. In *Wong Sun v United States*,[11] a defendant argued that certain evidence against him should be suppressed, since its discovery was the result of information unlawfully obtained from a codefendant.

[7] See n 5.

[8] This Court affirmed the suppression in *People v Williams*, 163 Mich App 744; 415 NW2d 301 (1987).

[9] Citing *Wong Sun v United States*, 371 US 471; 83 S Ct 407; 9 L Ed 2d 441 (1963).

[10] On appeal, defendant conditionally argues that he was denied effective assistance of counsel arising out of defense counsel's failure to object to introduction of this evidence. Defendant's argument is stated to be conditional upon our determination that "but for the counsel's failure to act, the [evidentiary issue] would warrant reversal." Since, as discussed *infra*, our determination on the evidentiary issue is to the contrary, we need not address defendant's ineffective assistance claim.

[11] *Supra*.

The Supreme Court rejected this argument, holding that, while the evidence could not be used against his codefendant, it could be used against him since, as to him, it was free of the taint of official impropriety.[12] The same may be said in the instant case. There was no official impropriety against this defendant.

Furthermore, standing to challenge a search or seizure is not automatic.[13] Rather, the challenger must have a special interest in the area searched or the article seized. The test is whether he had a reasonable expectation of privacy in the object or area of the intrusion.[14] Defendant could have no expectation of privacy which society is prepared to recognize as reasonable in the items on the supermarket rooftop. As no cognizable interest was infringed upon by the seizure of the items, there was no proverbial poisoned tree from which taint could arise as to this defendant. The evidence was properly admitted.

Finally, defendant contends that the trial judge erred in imposing a consecutive sentence. The prosecutor concedes the point. A consecutive sentence may not be imposed unless specifically authorized by statute.[15] The sentencing judge appears to have relied on MCL 768.7b; MSA 28.1030(2), which regards felonies committed while another felony charge is "pending." The instant offense was committed on June 21, 1985. At that time, defendant was on probation for a robbery in Illinois. An offense is not "pending" if probation has been ordered.[16] Thus, this scenario does not fall

---

[12] *Wong Sun, supra,* 371 US at 492.

[13] *People v Smith,* 420 Mich 1, 20; 360 NW2d 841 (1984).

[14] *Id.* at 21.

[15] *People v Chambers,* 430 Mich 217, 222; 421 NW2d 903 (1988).

[16] *People v Leal,* 71 Mich App 319; 248 NW2d 252 (1976), lv den 399 Mich 821 (1977).

within the ambit of the statute.[17] Accordingly, pursuant to MCR 7.216(A), it is ordered that the sentence for second-degree murder should run concurrently with the Illinois sentence for violation of probation.

Affirmed, except as to modification of the sentence.

---

[17] *People v Henry,* 107 Mich App 632, 636; 309 NW2d 922 (1981).