PEOPLE v BOWMAN

Docket No. 69453. Submitted March 20, 1991, at Lansing. Decided
May 7, 1991, at 9:35 A.M. Leave to appeal sought.

Joseph Bowman was convicted, following a jury trial in the
Oakland Circuit Court, Robert C. Anderson, J., of armed rob-
bery, possession of a firearm during the commission of a felony,
and first-degree criminal sexual conduct. The defendant ap-
pealed, alleging that the court lacked jurisdiction because of a
violation of the Interstate Agreement on Detainers, MCL
780.601; MSA 4.147(1). The offenses were committed in Novem-
ber 1977, and a warrant for the defendant's arrest was issued
but not served because he could not be found. In early 1980,
the authorities learned that he was incarcerated in Ohio. On
February 7, 1980, an officer of the Pontiac Police Department
caused a detainer to be placed against the defendant pursuant
to the IAD. The existence of the detainer was acknowledged by
an Ohio official. On February 19, 1980, the defendant signed an
IAD Form II request for disposition of the charges pending in
Michigan. The Ohio corrections officials apparently never sent
the form to Michigan officials. On May 21, 1981, the defendant
was paroled in Ohio, voluntarily signed a waiver of extradition,
and was brought to Oakland County. The defendant contested
the circuit court's jurisdiction, and the court ruled that he had
failed to show that his request for disposition had been deliv-
ered to Michigan authorities and, therefore, had failed to prove
a violation of the IAD. The court also ruled that he had waived
any IAD defenses by his voluntary waiver of extradition.

The Court of Appeals held:

1. The court erred in finding that the defendant had the
burden of establishing delivery of a signed IAD Form II to
Michigan authorities.

2. Jurisdiction over the defendant was not obtainable under
the Uniform Criminal Extradition Act, MCL 780.1 et seq.; MSA
28.1285(1) et seq., because, pursuant to the IAD, the charges

REFERENCES

Am Jur 2d, Extradition §§ 56, 60.

Validity, construction and application of Interstate Agreement on
Detainers. 98 ALR3d 160.

against the defendant should have been dismissed with prejudice in August 1980. Therefore, there were, in effect, no charges pending against the defendant in May 1981, when he purported to waive extradition. The State of Michigan was without legal authority to extradite the defendant. The defendant's convictions and sentences must be vacated and the charges dismissed.

Reversed.

1. Criminal Law — Interstate Agreement on Detainers — Dismissal of Charges.

The Interstate Agreement on Detainers provides that criminal charges by one party state against a prisoner in another party state must be dismissed if the prisoner is not brought to trial on those charges in the charging state within 180 days of notice of the prisoner's place of imprisonment and of the prisoner's request to the trial court and prosecutor in the charging state for a final disposition of the charges (MCL 780.601; MSA 4.147[1]).

2. Criminal Law — Interstate Agreement on Detainers — Uniform Criminal Extradition Act.

A voluntary waiver of extradition proceedings pursuant to the Uniform Criminal Extradition Act by a prisoner of another state after the charges against the prisoner should have been dismissed with prejudice under the Interstate Agreement on Detainers does not supply grounds for a valid assertion of jurisdiction over the prisoner by the courts of the charging state for trial on those charges (MCL 780.1 et seq., 780.601; MSA 28.1285[1] et seq., 4.147[1]).

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Richard Thompson,* Prosecuting Attorney, *Michael J. Modelski,* Chief, Appellate Division, and *Paul J. Fischer,* Assistant Prosecuting Attorney, for the people.

*Henry L. Greenwood,* for the defendant on appeal.

Before: Hood, P.J., and Jansen and G. S. Allen,* JJ.

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

PER CURIAM. On October 2, 1981, defendant was convicted by an Oakland Circuit Court jury of armed robbery, MCL 750.529; MSA 28.797, possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2), and first-degree criminal sexual conduct, MCL 750.520b; MSA 28.788(2). Thereafter, he was sentenced to two concurrent terms of life imprisonment for the armed robbery and criminal sexual conduct convictions and to an additional two years for the felony-firearm conviction. Defendant appeals by delayed leave granted, challenging the trial court's exercise of jurisdiction over him.

The offenses of which defendant was convicted were committed in November 1977. An arrest warrant was issued but not served because defendant could not be found. In early 1980, the authorities learned that defendant was incarcerated at the Marion Correctional Institution in Marion, Ohio. On February 7, 1980, an officer of the Pontiac Police Department caused a detainer to be placed against defendant pursuant to the Interstate Agreement on Detainers (IAD), MCL 780.601; MSA 4.147(1). The existence of the detainer was acknowledged by the record clerk at the Marion facility, who replied in writing: "Your detainer was received. Our records are now marked WANTED Dept. of Police, Pontiac Michigan."

On February 19, 1980, defendant signed an IAD Form II request for disposition of the charges pending in Michigan. However, no evidence was ever presented that the form was sent by Ohio corrections officials to the Oakland County Prosecutor's Office, the 50th District Court, or the Pontiac Police Department. Also, there was no evidence of a registered or certified mailing, or of a cover letter.

On May 21, 1981, defendant was paroled in

Ohio, and on that date, after voluntarily signing a waiver of extradition, defendant was brought to Oakland County. Since his arrival in Michigan, defendant has challenged the jurisdiction of the trial court, citing noncompliance with the IAD. On July 1, 1987, an evidentiary hearing was held on the issue in the Oakland Circuit Court. On September 4, 1987, the trial judge issued a written opinion finding that (1) defendant had failed to show that his notice of February 19, 1980, had been delivered to Michigan authorities and, thereby, had failed to prove a violation of the IAD, and (2) defendant had waived any IAD defenses by his voluntary waiver of extradition signed May 21, 1981. Accordingly, the circuit court ruled that it had properly acquired jurisdiction over defendant.

We disagree with the findings of the trial court and reverse.

The respected trial court's finding that the burden of proof rests on a prisoner to establish delivery of a signed IAD Form II to the state requesting the placement of a detainer was rejected by this Court in *People v Marshall,* 170 Mich App 269, 277; 428 NW2d 39 (1988). There, this Court held that a defendant complies with the notice requirement of Article III(a) of the IAD when he serves his Form II request on his jailers. *Id.* The Court stated:

> Upon being advised that a detainer has been lodged against him, a prisoner must prepare a written notice of his place of imprisonment and a request that a final disposition of the pending charges be made. The prisoner is required to give those documents to his warden. *The warden must then forward the documents along with further details of the prisoner's confinement* and an offer to surrender temporary custody to the appropriate officials of the other state. *A prisoner will not be penalized if the prison officials fail to carry out*

*their duties under the [IAD] agreement.* Failure of
the receiving state to try the prisoner within the
180-day period requires dismissal of the untried
information or complaint. [*Id.,* p 276. Emphasis
supplied. Citations omitted.]

See also *People v Malone,* 177 Mich App 393, 398-
399; 442 NW2d 658 (1989).

The proofs introduced at the evidentiary hearing
clearly established that, while incarcerated in
Ohio, defendant signed an IAD Form II requesting
disposition of the charges brought against him by
Oakland County authorities and gave the signed
form to the Ohio corrections officials. However, no
proofs were presented that Ohio officials ever de-
livered the form to Oakland County authorities.
As a consequence of the failure of the Ohio offi-
cials, defendant was not tried within the 180-day
period required by Article III(a) of the IAD. Accord-
ingly, dismissal of the charges brought against
defendant by Oakland County is mandated. In
reaching this conclusion, we do not hesitate to
acknowledge that the trial court did not have the
advantage of the subsequent decision in *Marshall,
supra.*

We also reject, in this question of first impres-
sion, the trial court's conclusion that jurisdiction
was obtainable under the Uniform Criminal Extra-
dition Act, as adopted by both Michigan and Ohio.[1]
We fail to understand how waiver of extradition
under the act dislodges rights earlier guaranteed
by the IAD. Defendant asserted his rights under
the IAD in February 1980, and through no fault of
his own, he was not tried within 180 days as
required by Article III(a) of the IAD. Article V(c)
expressly provides that if trial is not held within

---

[1] MCL 780.1 *et seq.;* MSA 28.1285(1) *et seq.;* Ohio Rev Code Ann,
§ 2963.01 *et seq.*

the period required by Article III(a), the court "where the indictment, information or complaint has been pending *shall enter an order dismissing the same with prejudice,* and any detainer based thereon *shall cease to be of any force or effect."* (Emphasis supplied.) Clearly, pursuant to this section, the charges against defendant should have been dismissed with prejudice in August 1980. Consequently, there were, in effect, no charges pending against defendant in May 1981, when defendant purported to waive extradition. Simply stated, in May 1981, the state was without legal authority to extradite defendant and, therefore, the Uniform Criminal Extradition Act cannot supply grounds for a valid assertion of jurisdiction over defendant.

Our conclusion is not altered by the case relied upon by the prosecution, *Koehler v State,* 653 SW2d 617 (Tex App, 1983), rev'd on other grounds 679 SW2d 6 (Tex Crim App, 1984). *Koehler* is clearly distinguishable. In *Koehler,* the defendant was arrested in Michigan pursuant to an outstanding Texas warrant. He waived extradition to Texas. Three days after his arrival in Texas, Koehler was released on bond. He was arrested on a federal parole violation warrant a short time later and transferred to a federal facility in Oklahoma. Koehler was returned to Texas under a writ of habeas corpus ad prosequendum. *Id.,* pp 619-620. We find *Koehler* distinguishable on two grounds. First, the trial court obtained jurisdiction over Koehler through the habeas corpus writ. That is not the case here. Second, the Texas appellate court found no evidence in the record disclosing that Koehler had been serving a term of imprisonment in Michigan or that there had been a written request, as required by the IAD, for temporary custody ever presented to Michigan authorities. In

other words, the court concluded that the record was devoid of any effort on the part of anybody to rely on the IAD in transferring Koehler from Michigan to Texas. Instead, it appeared to the court that Koehler was transferred under the Uniform Criminal Extradition Act. *Id.*, p 620.

For the foregoing reasons, defendant's convictions and sentences are vacated and the charges dismissed.

Reversed.