PEOPLE v FEX

Docket No. 91979. Decided January 9, 1992. On application by the people for leave to appeal, the Supreme Court, in lieu of granting leave, reversed the judgment of the Court of Appeals and reinstated the judgment of the circuit court. Certiorari granted by the Supreme Court of the United States on May 18, 1992, 504 US — (1992).

In an opinion per curiam, signed by Justices BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, the Supreme Court *held:*

The Court of Appeals erred in calculating the 180-day period.

The period begins to run when a prisoner's request for final disposition of an indictment, information, or complaint is received by officials of the state in which the prosecution is pending. Under the agreement, a prisoner has caused delivery when there is actual receipt.

Reversed.

Justice LEVIN, joined by Chief Justice CAVANAGH, dissenting, stated that peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is required. In this case, because a legal assessment is required, peremptory disposition is not appropriate.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, *Joe Filip,* Prosecuting Attorney, and *Jerrold Schrotenboer,* Assistant Prosecuting Attorney, for the people.

*John B. Payne* for the defendant.

PER CURIAM. The Court of Appeals reversed this defendant's convictions on the ground that his trial did not take place within the 180-day time limit that is found in the Interstate Agreement on Detainers. We conclude that the Court of Appeals erred in its calculation of the 180-day period. We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.

I

In December 1987, a robbery took place at a Jackson restaurant. Following an investigation, the defendant was charged with armed robbery and possession of a firearm during the commission of that felony.[1] MCL 750.529, 750.227b; MSA 28.797, 28.424(2).

For an unrelated conviction, the defendant was incarcerated during 1988 at the Westville Correctional Center in Indiana. On September 7, 1988, he learned that Michigan authorities had placed a detainer on him as a result of the Jackson robbery. That day, he gave the Indiana prison authorities his request for final disposition of the robbery charge.

The Indiana authorities mailed the defendant's request on September 22, 1988. It was received by the Jackson County Prosecuting Attorney on September 26, 1988.

The defendant's trial began on March 22, 1989, when a jury was selected. March 22 was 177 days after the request was received in Jackson County, 181 days after it was mailed from Indiana, and 196

---

[1] The defendant was also charged with assault with intent to murder, but that count was later dismissed. MCL 750.82; MSA 28.277.

days after the defendant delivered his request to the Indiana authorities.

Prior to trial, the defendant had filed a written motion for dismissal under the Interstate Agreement on Detainers (IAD). MCL 780.601 *et seq.*; MSA 4.147(1) *et seq.* In his motion, he argued that the trial would not begin until after the 180-day limitation found in Article III(a) of the IAD.

The trial court heard and denied the motion on the first day of trial. The next day, the jury found the defendant guilty of armed robbery and felony-firearm.[2]

The defendant's convictions were reversed by the Court of Appeals.[3] The prosecutor has applied for leave to appeal.

II

Article III(a) of the IAD provides that a defendant "shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint . . . ." This case squarely presents the question whether the phrase "caused to be delivered" refers to the date when the request is given to prison authorities, or the date when the request is received by officials of the state where the prosecution is pending.

The IAD is several decades old and is written in a style that permits the interpretation urged by

---

[2] The defendant was sentenced to a term of from five to twenty years in prison for armed robbery. He also received the mandatory two-year consecutive term for felony-firearm.

[3] Unpublished opinion per curiam of the Court of Appeals, decided June 21, 1991 (Docket No. 119192).

the defendant.[4] However we are persuaded that the proper interpretation is that urged by the prosecutor. In Article III(b), the IAD states a prisoner's duty to give or send the request to the prison authorities who are holding him. Similar language, which would indicate that the 180-day period runs from the date the request is given or sent to prison authorities, could easily have been employed in Article III(a), if the drafters had been so inclined. Instead, the period runs from the time when the prisoner has caused *delivery,* which is actual receipt.

This interpretation is consistent with the explanation offered by the United States Supreme Court in *Carchman v Nash,* 473 US 716, 721; 105 S Ct 3401; 87 L Ed 2d 516 (1985):

> Specifically, Art. III requires the warden to inform the prisoner that a detainer has been lodged against him and that he may request final disposition of the indictment, information, or complaint upon which the detainer is based. If the prisoner makes such a request, the warden must forward it, together with a certificate providing certain information about the prisoner's terms of confinement, to the appropriate prosecuting official and court of the receiving State. The authorities in the receiving State *then* must bring the prisoner to trial within 180 days, absent good cause shown, or the court must dismiss the indictment, information, or complaint with prejudice, and the detainer will cease to be of any force or effect. [Emphasis added.]

[4] Article III(a) does not explicitly state that the notice must be received in order to trigger the 180-day period. Nor does it say that the prisoner must deliver his request. Instead, the statute requires the prisoner to have "caused" the delivery. Since Article III(b) specifically states that the prisoner is to give the request to the prison authorities (the prisoner is not personally to send the request to the state that seeks to prosecute), one could say that a prisoner who has fulfilled the obligation under Article III(b) has "caused" the delivery to the extent that it is within the prisoner's power to do so.

A similar view is found in the report that the United States Senate Judiciary Committee presented when it recommended passage of the IAD:

> Under the agreement, prison authorities are required to inform prisoners of all indictments, informations, or complaints on the basis of which detainers have been lodged against them by other jurisdictions. Prisoners may then request trial on such pending charges. Any request is transmitted through the warden to the proper official in the other jurisdiction who *then* has 180 days to bring the prisoner to trial. [S Rep No 91-1356, 91st Cong (2nd Sess), reprinted in 3 US Code Cong & Admin News 4864, 4865 (1970). Emphasis added.]

The rule requiring actual receipt of the prisoner's request has been adopted in the overwhelming majority of jurisdictions that have considered this question.[5] A typical discussion is found in *State v Moore,* 774 SW2d 590, 595 (Tenn, 1989), where the Tennessee Supreme Court explained:

> In our opinion the receiving state cannot be charged with attempting to try the prisoner within 180 days until the receiving state has been given notice, by the prisoner or by officials of the sending state, of a request to proceed under Article III. Once that burden has been satisfied by the prisoner, the receiving state must, of course, comply with the terms of the Compact. There is a division of authority on this point. A few states have calculated the time from the date of the signing of the request for disposition, Form II, regardless of whether the receiving state receives the request or not. *See, e.g., McCallum v State,* 407 So 2d 865

---

[5] An obvious purpose of an interstate agreement is to achieve a uniform body of law in the jurisdictions that have enacted the agreement. Absent sound reasons to the contrary, it is therefore sensible to interpret such an agreement in the same manner as a majority of other jurisdictions.

(Ala Crim App, 1981), *People v Daily,* 46 Ill App 3d 195; 4 Ill Dec 756; 360 NE2d 1131 (1977), *Commonwealth v Martens,* 398 Mass 674; 500 NE2d 282 (1986), cert den 481 US 1041; 107 S Ct 1982; 95 L Ed 2d 821 (1987), *State v Wells,* 186 NJ Super 497; 453 A2d 236 (1982), and *People v [Pellegrino],* 131 Misc 2d 118; 499 NYS2d 841 (1986).

By far a greater number of cases, however, have reached the opposite conclusion, holding that the prosecutor or court in the receiving state cannot reasonably be expected to proceed until receipt of notice of the prisoner's request. *See, e.g., Young v Mabry,* 471 F Supp 553 (ED Ark, 1978), aff'd 596 F2d 339 (CA 8 [1979]), cert den 444 US 853; 100 S Ct 107; 62 L Ed 2d 69 (1979); *Beebe v Vaughn,* 430 F Supp 1220 (D Del, 1977); *Spears v State,* 280 Ark 577; 660 SW2d 913 (1983); *People·v Bielecki,* 41 Colo App 256; 588 P2d 377 (1978); *State v Braswell,* 194 Conn 297; 481 A2d 413 (1984), cert den sub nom *Braswell v Connecticut,* 469 US 1112; 105 S Ct 793; 83 L Ed 2d 786 (1985); *State v Minnick,* 413 So 2d 168 (Fla App, 1982); *Pinnock v State,* 384 So 2d 738 (Fla App, 1980); *Thompson v State,* 186 Ga App 379; 367 SE2d 247 (1988); *Scrivener v State,* 441 NE2d 954 (Ind, 1982); *Holland v State,* 265 Ind 216; 352 NE2d 752 (1976); *Sweat v Darr,* 235 Kan 570; 684 P2d 347 (1984); *State v White,* 234·Kan 340; 673 P2d 1106 (1983); *Hines v State,* 58 Md App 637; 473 A2d 1335 (1984); *State v Walton,* 734 SW2d 502 (Mo [*en banc*], 1987); *State v McGann,* 126 NH 316; 493 A2d 452 (1985); *State v Ternaku,* 156 NJ Super 30; 383 A2d 437 (1978); *State v Reitz,* 26 Ohio App 3d 1; 498 NE2d 163 (1984); *Commonwealth v Fisher,* 451 Pa 102; 301 A2d 605 (1973); *State v Moosey,* 504 A2d 1001 (RI, 1986). *See generally* anno: 98 ALR[3d] 160, § [16][a] . . . .

In these cases it has been noted that it would be contrary to the public interest to start the 180 day period before actual receipt by the prosecutor of the prisoner's request and that this could not have

been the legislative intent in enacting the Compact. Article III requires that the receiving state proceed after the prisoner "*shall have caused to be delivered* to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of his imprisonment and his request for final disposition" of the charges pending there. (Emphasis added).

In the present case, the Court of Appeals cited three prior decisions for the rule that the 180-day statutory period is triggered when a defendant provides a request for final disposition to prison authorities. *People v Marshall,* 170 Mich App 269, 277; 428 NW2d 39 (1988); *People v Malone,* 177 Mich App 393, 398-399; 442 NW2d 658 (1989); *People v Bowman,* 189 Mich App 215, 218-219; 472 NW2d 645 (1991). However, an examination of these authorities demonstrates that they are of limited applicability.

In *Marshall,* a prisoner's initial request for final disposition was never delivered by prison authorities. Similarly, *Bowman* involved a complete failure to forward a prisoner's request.[6] The statement in *Malone* was dictum.[7]

In light of all these considerations, we are persuaded that the majority rule should be adopted in Michigan. We thus conclude that the Court of Appeals erred when it found that the defendant was not tried within the 180-day period stated in

[6] Since Article III(b) states that prison authorities "shall promptly forward" a prisoner's request, we reserve the question how the IAD should be applied in a case where the request is never forwarded or where there is a very substantial delay in delivering the defendant's request.

[7] Under the analysis applied by the Court of Appeals in *Malone,* the defendant was timely tried without regard to whether the 180-day period was triggered by the defendant giving notice to prison authorities or by actual receipt in the state where the prosecution was pending.

Article III(a) of the IAD.[8] We therefore reverse the judgment of the Court of Appeals and reinstate the judgment of the circuit court.[9] MCR 7.302(F)(1).

BRICKLEY, BOYLE, RILEY, GRIFFIN, and MALLETT, JJ., concurred.

LEVIN, J. (*dissenting*). I adhere to the view that peremptory reversal should be reserved for cases in which the law is settled and no factual assessment is required.[1] In the instant case, as indicated in the majority opinion, a legal assessment is required. Peremptory disposition is not appropriate.

The meaning of the phrase, "within one hundred and eighty days after [the prisoner] shall have caused to be delivered" to the prosecutor and the

---

[8] We have considered the defendant's other arguments, and are not persuaded that relief should be granted on those claims.

[9] The defendant's motion for bond pending appeal is therefore denied as moot.

[1] *Roek v Chippewa Valley Bd of Ed*, 430 Mich 314, 322; 422 NW2d 680 (1988) (LEVIN, J., separate opinion); *Grames v Amerisure Ins Co*, 434 Mich 867, 868-875 (1990) (LEVIN, J., dissenting); *People v Little*, 434 Mich 752, 769-770; 456 NW2d 237 (1990) (LEVIN, J., dissenting); *People v Wrenn*, 434 Mich 885, 885-886 (1990) (LEVIN, J., dissenting); *Harkins v Northwest Activity Center, Inc*, 434 Mich 896, 899 (1990) (LEVIN, J., dissenting); *Dep't of Social Services v American Commercial Liability Ins Co*, 435 Mich 508, 515; 460 NW2d 194 (1990) (LEVIN, J., separate opinion); *Yahr v Garcia*, 436 Mich 872 (1990) (LEVIN, J., dissenting); *Universal Underwriters Ins Co v Vallejo*, 436 Mich 873, 873-874 (1990) (LEVIN, J., dissenting); *People v Stephens*, 437 Mich 903, 903-910 (1991) (LEVIN, J., dissenting); *People v Berkey*, 437 Mich 40, 54; 467 NW2d 6 (1991) (LEVIN, J., dissenting); *Turner v Washtenaw Co Rd Comm*, 437 Mich 35, 38-39; 467 NW2d 4 (1991) (LEVIN, J., separate opinion); *Lepior v Venice Twp*, 437 Mich 955, 956-966 (1991) (LEVIN, J., dissenting).

See *Schweiker v Hansen*, 450 US 785, 791; 101 S Ct 1468; 67 L Ed 2d 685 (1981) (Marshall, J., dissenting) ("A summary reversal is a rare disposition, usually reserved by this Court for situations in which the law is settled and stable, the facts are not in dispute, and the decision below is clearly in error"); *Leis v Flynt*, 439 US 438, 457-458; 99 S Ct 698; 58 L Ed 2d 717 (1979) (Stevens, J., dissenting) ("Summary reversal 'should be reserved for palpably clear cases of . . . error.' *Eaton v Tulsa*, 415 US 697, 707 [94 S Ct 1228; 39 L Ed 2d 693 (1974)] [Rehnquist, J., dissenting]").

court, written notice and request for formal disposition (Interstate Agreement on Detainers, MCL 780.601; MSA 4.147[1]), is not so free from doubt that peremptory disposition is appropriate.

The paraphrase of the quoted words by the United States Supreme Court, set forth in the majority opinion, who then has 180 days to bring the prisoner to trial,[2] does not indicate whether the 180 days begin to run when notice is given or sent by the prisoner, or, rather, when notice is received by the prosecutor and court. The integrity of, and judicial reliance on, congressional committee reports, has been questioned.[3] The weight of authority is surely worthy of consideration, but has not been thought to be controlling, or a sufficient reason, in itself, for decision.

CAVANAGH, C.J., concurred with LEVIN, J.

[2] *Ante,* p 120.

[3] "[W]e are a Government of laws not of committee reports." *Wisconsin Public Intervenor v Mortier,* 501 US —; 111 S Ct 2476; 115 L Ed 2d 532, 553 (1991) (Scalia, J., concurring).