*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

JAYMES MILLER,

        Defendant-Appellant.

UNPUBLISHED
November 21, 2019

No. 343756
Monroe Circuit Court
LC No. 17-244142-FC

Before: RONAYNE KRAUSE, P.J., and METER and GLEICHER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of armed robbery, MCL 750.529, conspiracy to commit armed robbery, MCL 750.157a; MCL 750.529, carjacking, MCL 750.529a, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant was sentenced, as a third habitual offender, MCL 769.11, to 35 to 60 years' imprisonment for the armed robbery conviction, 35 to 60 years' imprisonment for the conspiracy to commit armed robbery conviction, 35 to 60 years' imprisonment for the carjacking conviction, and 24 months' imprisonment for the felony-firearm conviction. On appeal, defendant argues that the trial court erred in denying defendant's motion to dismiss for violations of the Interstate Agreement on Detainers (IAD), MCL 780.601, and that the trial court erred in its assessment of points for OVs 8, 14, and 19. We affirm.

## I. PROCEDURAL HISTORY

This case arises out of the armed robbery of the Dollar General in Ash Township, Michigan, on December 23, 2016. At approximately 10:55 p.m., defendant entered the store with his face covered. At the time, the victim, AF, was working as an employee at the store, and defendant's cousin, Dontai Renfroe,[1] was the store's assistant manager. Defendant pointed a gun

---

[1] Renfroe initially pleaded guilty to armed robbery, conspiracy to commit armed robbery, and carjacking, in relation to his involvement with the robbery of the Dollar General. However,

in AF's face and told her to give him the money from the safe, which contained approximately $15,000. Defendant took AF to the front of the store to lock the front door. Defendant also demanded AF's and Renfroe's telephones and keys. He took AF to the back office so that she could retrieve her telephone and keys. Defendant ordered AF to open the store's safe, which was also in the back of the store, and he became angry when AF was unable to do so. Renfroe opened the time release portion of the store's safe. Defendant stole approximately $7,500 from the safe, as well as AF's telephone[2] and personal keys, and the store's cordless telephone. Defendant ordered AF to return to the back room until defendant had left, threatening to shoot her if she did not comply. Defendant drove AF's van from the store. Responding police officers found Renfroe's demeanor and conduct upon their arrival and in the security camera footage to be suspicious. Defendant was identified as a suspect based on analyzing Renfroe's telephone.

Defendant was arrested on January 5, 2018, at his residence in Toledo. Because he was on parole at the time, he was incarcerated in Ohio. On June 8, 2017, the Monroe County Prosecutor received defendant's request for a final disposition. Defendant's trial date was set for February 5, 2018, which was 243 days after the prosecutor's receipt of defendant's request for a final disposition. Defendant filed a motion to dismiss on the basis of a violation of the IAD. Defendant argued that the prosecution violated the IAD because defendant's trial was not within 180 days of the prosecution's receipt of defendant's request. The trial court denied defendant's motion to dismiss because there was good cause for the adjournments that required the trial to be scheduled more than 180 days after the prosecution received defendant's request. Defendant was found guilty by a jury as described above, and defendant does not substantively appeal his convictions.[3]

## II. MOTION TO DISMISS

Defendant argues that the trial court erred in determining that five periods of delay were excluded from the IAD's 180-day limit. Consequently, he concludes that his charges should have been dismissed. We disagree.

---

defendant's plea agreement was set aside, and defendant was resentenced on March 22, 2018, to 15 to 40 years' imprisonment. Renfroe filed a delayed application for leave to appeal with this Court, which was denied. *People v Renfroe*, unpublished order of the Court of Appeals, entered December 21, 2018 (Docket No. 346374). Renfroe filed an application for leave to appeal with our Supreme Court, which was denied. *People v Renfroe*, ___ Mich ___; 929 NW2d 360 (2019).

[2] Defendant took AF's telephone and the store's telephone but did not take Renfroe's telephone.

[3] Defendant moved to remand on the basis of an alleged recantation by Renfroe. This Court denied that motion without prejudice. *People v Miller*, unpublished order of the Court of Appeals, entered September 6, 2019 (Docket No. 343756). We note that Renfroe did not testify in this matter and the reason his plea agreement was set aside, see footnote 1, was his refusal to testify pursuant to that agreement at defendant's preliminary examination. Defendant has not further pursued this theory.

This Court reviews for an abuse of discretion a trial court's determination on a motion to dismiss. *People v Stone*, 269 Mich App 240, 242; 712 NW2d 165 (2005). A trial court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012). A trial court's attribution for a delay is reviewed for clear error. *Stone*, 269 Mich App at 242. "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Miller*, 482 Mich 540, 544; 759 NW2d 850 (2008). Questions of statutory interpretation are reviewed de novo. *People v Gardner*, 482 Mich 41, 46; 753 NW2d 78 (2008).

"The IAD is a uniform law which prescribes procedures by which a prisoner may demand the prompt disposition of charges pending against him in a state other than the one in which he is imprisoned and prescribes procedures by which a state may obtain, for trial, a prisoner who is incarcerated in another state." *People v Malone*, 177 Mich App 393, 396; 442 NW2d 658 (1989). When a defendant "affirmatively request[s] final disposition," *id.*, Article III of the IAD provides, in pertinent part:

> [H]e shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officers' jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided that for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. [MCL 780.601, art III(a).]

If a defendant is not brought to trial within 180 days, a trial court shall enter an order of dismissal with prejudice. *People v Swafford*, 483 Mich 1, 9; 762 NW2d 902 (2009), citing MCL 780.601, art V(c). However, "the IAD expressly permits—and thus excludes from the 180–day period— 'necessary or reasonable continuance[s]' for 'good cause shown in open court . . . .' " *People v Lown*, 488 Mich 242, 261 n 30; 794 NW2d 9 (2011), quoting MCL 780.601, art III(a). Thus, certain delays may toll the 180-day period. As noted, defendant was brought to trial after 243 days, 63 days beyond the 180-day period.

The need for "good cause shown in open court" applies "only to adjournments and other delays caused by the prosecution." *People v Harris*, 148 Mich App 506, 513; 384 NW2d 816 (1986). Delays either caused by the defense, or to accommodate the defense, are necessarily considered tolling events. *Stone*, 269 Mich App at 243; *Malone*, 177 Mich App at 399. Defendant admits that 19 days of delay were due to his own requests and thus tolled the 180-day period. Thus, the discrepancy between the delay in bringing defendant to trial and the delay permitted by the IAD is reduced to 44 days.

An additional 31 days of delay occurred because Renfroe unexpectedly refused, from the witness stand, to testify at defendant's preliminary examination, in violation of his then-existing plea agreement. Defendant and the prosecution were both uncertain, at the time, whether Renfroe's plea agreement was enforceable. When the trial court refused to make an immediate ruling on that question, it appears that both parties requested an opportunity to consider and brief the implications of Renfroe's refusal. We have difficulty attributing this delay to any particular party. However, Renfroe's refusal was clearly a surprise to everyone present. Indeed, it appears

that Renfoe made the decision to discontinue testifying while on the stand, and he maintained that refusal despite being informed by the court and attorneys that he would lose his plea agreement if he did not testify. It is entirely reasonable that neither the parties nor the trial court were prepared for the ramifications, and defendant agreed to the adjournment. We therefore consider the delay occasioned by "good cause shown in open court." Consequently, this 31-day delay also tolled the 180-day period, reducing the discrepancy to 13 days.

The longest delay was 54 days caused by the trial judge's hospitalization due to an illness. Defendant concedes that "this delay may meet the requirement of 'good cause.' " We agree, and we conclude that the judge's hospitalization certainly constitutes good cause shown. Defendant argues that it nevertheless does not toll the 180-day limit under the IAD because it was not "shown in open court." However, the concept of "open court" does not necessarily require proceedings recorded in "the transcripts of open-court proceedings." See *Harris*, 149 Mich App at 513. Rather, it is intended to preclude "adjournments granted ex parte to the prosecutor." *People v Waclawski*, 286 Mich App 634, 662; 780 NW2d 321 (2009). It is sufficient if the defendant demonstrably has a meaningful opportunity to address the matter. *Id.* at 662-663. The trial court contacted the parties via telephone and requested that the preliminary examination be adjourned because the trial judge was hospitalized due to illness. Defendant did not object to the adjournment, made no request for an alternate judge, and agreed to the new preliminary examination date. The open court requirement was sufficiently satisfied. Furthermore, a defendant generally cannot assert that his own conduct constitutes error warranting reversal. See *People v Green*, 228 Mich App 684, 691; 580 NW2d 444 (1998). Thus, this 54-day delay also tolled the 180-day period.

Consequently, 104 days of delay were attributable to or for the benefit of the defense, or were for good cause shown in open court. The total unexcused delay under the IAD was therefore 139 days, well within the 180-day period. It is therefore unnecessary for us to address any of the other delays. Because the total delay period was within the IAD's 180-day limit, the trial court did not err by denying defendant's motion to dismiss.

### III. OFFENSE VARIABLES

Defendant argues that the trial court erred by assessing 15 points for OV 8, 10 points for OV 14, and 15 points for OV 19. We disagree.

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence. Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).

### A. OV 8

Defendant argues that the trial court erred in assessing 15 points for OV 8 because defendant did not move AF to an area of greater danger. We disagree.

Under OV 8, 15 points must be assessed when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time

necessary to commit the offense." MCL 777.38(1)(a). "Under the plain meaning of the term 'asportation,' movement of a victim that is incidental to the commission of a crime nonetheless qualifies as asportation." *People v Barrera*, 500 Mich 14, 17; 892 NW2d 789 (2017).

In determining that 15 points was appropriate for OV 8, the trial court stated:

Number one, I agree, and the Court sat through the trial here, and the Court saw the actual video of what took place here. This victim was taken into an office, a place that was more secrete [sic], that had less visibility, publicly speaking, or anybody else to see the victim.

So, frankly, the Court does find that she was taken to a place of greater danger. And with everything that went on, the length of time in this occurrence, the places that she was traipsed throughout the store, it definitely was for a longer amount of time than was necessary to commit the offense of Robbery Armed here, when you walk right into the place and there are the cash register or things like that.

The trial court did not err when it assessed 15 points for OV 8. Defendant led AF about the Dollar General, from the cash registers to the front door to the back room. Defendant took AF to the back room, away from the windows and the front door, where witnesses might be able to see the armed robbery. "A place of greater danger includes an isolated location where criminal activities might avoid detection." *People v Dillard*, 303 Mich App 372, 379; 845 NW2d 518 (2013), overruled in part on other grounds by *Barrera*, 500 Mich at 17. The back room of the Dollar General was an isolated location where the robbery would be less likely to be discovered. Therefore, there was a preponderance of the evidence to support the trial court's assessment of 15 points.

### B. OV 14

Defendant argues that the trial court erred when it assessed 10 points for OV 14 because Renfroe was the leader of the armed robbery. We disagree.

Ten points must be assessed for OV 14 when "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). When two offenders are involved in a criminal transaction, only one individual may be considered a leader. *People v Rhodes (On Remand)*, 305 Mich App 85, 88; 849 NW2d 417 (2014). "[A] 'leader' is defined in relevant part as a person or thing that leads or a guiding or directing head, as of an army or political group. To 'lead' is defined in relevant part as, in general, guiding, preceding, showing the way, directing, or conducting." *Id*. at 90 (quotation marks and citation omitted).

Here, defendant was the only individual with a gun during the armed robbery, which is some evidence of leadership. *Rhodes*, 305 Mich App at 90 ("[D]efendant's exclusive possession of a gun during the criminal transaction is *some* evidence of leadership . . .") (emphasis in original). Defendant took an active role during the robbery to steal the money and telephones, whereas Renfroe was submissive to defendant's orders. Additionally, defendant was the individual with sole possession of the stolen money and the victim's and store's telephones. Detective Preadmore's statement in the presentence investigation report (PSIR) that defendant

contacted Renfroe to initiate the armed robbery also indicates that defendant was the leader of the armed robbery. Additionally, defendant sent Renfroe a text message the night of the robbery stating, "1055 I'm threw dere taken yo phone hers n store n her car." The text message indicates that defendant developed a plan to take all the telephones from the store during the robbery. Therefore, there was a preponderance of the evidence to support the trial court's assessment of 10 points for OV 14.

## C. OV 19

Defendant argues that the trial court erred in assessing 15 points for OV 19 because there was not a preponderance of the evidence to suggest that defendant intended to interfere with the rendering of emergency services when he stole AF's and Dollar General's telephones. We disagree.

"OV 19 is generally scored for conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). An assessment of 15 points is appropriate when "[t]he offender used force or the threat of force against another person or the property of another person to interfere with, attempt to interfere with, or that results in the interference with the administration of justice or the rendering of emergency services." MCL 777.49(b).

Defendant argues that the trial court speculated that the reason defendant stole the telephones was to interfere with the administration of justice or the rendering of emergency services. Defendant asserts that it was more reasonable that defendant stole the telephones for their value. We note that the store's telephone was a cordless handset, not a cellular telephone, and thus had questionable value on its own. Nevertheless, although defendant's theory is not impossible, the trial court reasonably inferred that defendant stole the telephones to prevent AF from calling the police. "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012), aff'd 495 Mich 33 (2014). Additionally, defendant threatened to shoot AF if she did not stay in the back until defendant left. Threatening a victim constitutes interference with the administration of justice. *People v Hershey (On Remand)*, 303 Mich App 330, 344; 844 NW2d 127 (2013). Because the trial court reasonably inferred that defendant stole AF's and Dollar General's telephones to interfere with the administration of justice, and because defendant threatened AF, there was a preponderance of the evidence for the trial court to assess 15 points for OV 19.

## IV. CONCLUSION

The prosecution did not violate the IAD, so the trial court properly denied defendant's motion to dismiss. Additionally, the trial court properly assessed 15 points for OV 8, 10 points for OV 14, and 15 points for OV 19.

Affirmed.

/s/ Amy Ronayne Krause
/s/ Patrick M. Meter
/s/ Elizabeth L. Gleicher